## IN THE SUPREME COURT OF MISSISSIPPI
### NO. 97-CT-00558-SCT

*MARCUS FEARS*

*v.*

*STATE OF MISSISSIPPI*

### ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 03/04/97 |
| TRIAL JUDGE: | HON. RICHARD WAYNE McKENZIE |
| COURT FROM WHICH APPEALED: | PERRY COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | S. CHRISTOPHER FARRIS |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEAN SMITH VAUGHAN |
| DISTRICT ATTORNEY: | E. LINDSAY CARTER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED -06/29/2000 |
| MOTION FOR REHEARING FILED: | 11/17/1999; 7/28/2000; denied 3/15/2001 |
| MANDATE ISSUED: | 3/22/2001 |

**EN BANC.**

**SMITH, JUSTICE, FOR THE COURT:**

### STATEMENT OF THE CASE

¶1. Marcus Fears was convicted of murder in the Circuit Court of Perry County, and the conviction was affirmed by the Court of Appeals. ***Fears v. State***, No. 97-KA-00558-COA (Miss. Ct. App. 1998). We granted Fears's petition for writ of certiorari and reversed and remanded for a new trial. The State filed its motion for rehearing, asking this Court to reconsider our decision. The motion for rehearing is granted. The original opinion in this case is withdrawn, and this opinion is substituted therefor.

### STATEMENT OF THE FACTS

¶2. On March 15, 1996, Marcus Fears shot and killed Eddie Allen with a .22 caliber rifle. Fears and Allen had been in a fight several hours earlier. Allen came to Fears's grandparents' house where Fears lived. A heated discussion ensued between Allen and Fears's grandfather. After several minutes, Fears emerged from the house with the rifle. He shot Allen in the back and in the leg. Allen died at the scene. Fears was indicted for murder.

¶3. Fears presented alternative defenses. First, he claimed that the shooting was in self-defense. Fears relied on the fact that Allen appeared at the house with a golf club. Additionally, Allen allegedly had

threatened to kill Fears immediately before the shooting. Fears also presented the theory that Allen had a pistol at the time of the shooting, but that someone had removed the second gun from the crime scene before the police arrived. Second, Fears apparently claimed that the shooting was accidental and in the heat of passion. His grandfather testified that the gun went off as Allen was tackling Fears.

¶4. After being instructed on murder and manslaughter, the jury convicted Fears of murder. He was sentenced to life imprisonment without the possibility of parole.

¶5. The Court of Appeals affirmed Fears's conviction, and this Court granted Fears's petition for certiorari. In his petition, Fears raised two arguments, and this Court granted certiorari as to both issues. However, because we found one issue to be dispositive, the prior opinion of this Court addressed only that issue. Thus, because we here withdraw that opinion, we address both issues raised by Fears in his petition for certiorari:

> **I. THE CIRCUIT COURT COMMITTED REVERSIBLE ERROR IN GIVING CONFLICTING JURY INSTRUCTIONS.**
>
> **II. FEARS' RIGHT TO REMAIN SILENT WAS VIOLATED WHEN THE PROSECUTOR COMMENTED, IN FRONT OF THE JURY, THAT FEARS COULD TAKE THE STAND AND TESTIFY AS TO THREATS MADE AGAINST HIM BY EDDIE ALLEN.**

### DISCUSSION OF LAW

> **I. THE CIRCUIT COURT COMMITTED REVERSIBLE ERROR IN GIVING CONFLICTING JURY INSTRUCTIONS.**

¶6. The trial judge instructed the jury on the crime of murder, on the lesser-included offense of manslaughter, and on excusable homicide. Jury Instruction S-8 discussed the time frame required for formulating malice aforethought and premeditated design. Jury Instruction S-8 stated:

> The Court instructs the jury that while malice aforethought is a necessary ingredient to the crime of Murder, that malice aforethought does not necessarily mean hatred or ill will and **need not exist in the mind of the Defendants for any definite time, not for hours, days or even minutes, but if there is malice aforethought and a premeditated design to kill and it exists in the mind of the Defendants but for an instant before the fatal act**, this is sufficient premeditation and malice aforethought to constitute the offense of Murder, unless the killing is justifiable.

(emphasis added.)

¶7. The court also instructed the jury on excusable homicide. Jury Instruction D-9 informed the jury that a killing "shall be excusable when committed by accident and misfortune, in the heat of passion, upon any sudden and sufficient provocation."

¶8. Fears argues that allowing the jury to find premeditated design to kill at the instant of the shooting negates the possibility of a finding of an excusable killing in the heat of passion. Thus, he maintains that the jury instructions on excusable homicide and on premeditated design are in conflict.

¶9. This Court's standard of review in looking at jury instructions is "[i]n determining whether error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found."*Coleman v. State*, 697 So. 2d 777, 782 (Miss.1997) (quoting *Collins v. State*, 691 So. 2d 918 (Miss.1997)).

¶10. We first address Fears's assignment of error to reiterate the necessity that counsel make specific objections in order to preserve a question for appellate review. The Court of Appeals correctly held that this issue was procedurally barred because Fears did not object to the conflicting instructions and did not assign the issue as error in his motion for new trial. The fact that the defense did not object to the jury instructions is determinative in this case because "[w]e accept without hesitation the ordinarily sound principle that this Court sits to review actions of trial courts and that we should undertake consideration of no matter which has not first been presented to and decided by the trial court." *Barnes v. Singing River Hosp. Sys.*, 733 So. 2d 199, 202 (Miss.1999). This Court has held specifically that "errors based on the granting of an instruction will not be considered on appeal unless specific objections stating the grounds are made in the trial court." *Oates v. State*, 421 So. 2d 1025, 1030 (Miss. 1982) (citing *Collins v. State*, 368 So. 2d 212 (Miss. 1979)). A trial judge will not be found in error on a matter not presented to him for decision. *Gray v. State*, 728 So. 2d 36, 37 (Miss. 1998); *Bender v. North Meridian Mobile Home Park*, 636 So. 2d 385, 389 (Miss. 1994).

¶11. Fears relies upon *Duvall v. State*, 634 So. 2d 524 (Miss. 1994), for the argument that the failure of his attorney in the case at bar to object to the instruction does not prevent this Court from reversing the conviction. In *Duvall*, we held that the trial court erroneously granted State's Instruction S-2, which provided that deliberate design can originate "at the very moment of the act of violence." *Id.* at 525. We held this to be reversible error, despite the fact that defense counsel failed to object. We stated:

> There is no reason for the prosecuting attorney and the circuit judge to be unaware of the clear holding in *Windham*, and S-2 should never have been offered by the State or granted by the circuit judge.... Where, however, the State offers and the circuit judge grants and instruction which we have clearly held is erroneous, we are not going to hold defense counsel to the same degree of diligence he has on instructions this Court has not ruled upon.

*Id.* at 525-26 (citing *Windham v. State*, 520 So. 2d 123 (Miss. 1987)).

¶12. The instruction held to be erroneous in *Windham* stated that deliberate design may be formed **at the very moment** of the fatal act. *Windham*, 520 So. 2d at 125. Thus, the trial court and prosecutor in *Duvall* had ample notice that an instruction which stated that deliberate design can originate "**at the very moment** of the act of violence" was clearly erroneous. The instruction in the case at hand, however, stated that premeditated design may be formed **an instant** *before* **the fatal act.** *Windham* does not constitute clear notice to a trial judge or prosecutor that the instruction at issue in this case was clearly erroneous. Thus, there is no reason not to hold defense counsel to the same degree of diligence to which this Court has repeatedly held that it will be held. The Court of Appeals was correct in holding that this issue was procedurally barred because Fears did not object to the instructions. Because Fears failed to object to the granting of this particular jury instruction, his claim is procedurally barred. *Walker v. State*, 671 So. 2d 581, 596 (Miss.1995).

¶13. Without relaxing the bar, this Court also alternatively looks to the merits of Fears's claim. Fears

maintains that the jury instructions on excusable homicide and on premeditated design are in conflict and relies on *Windham* in support of his position. In *Windham*, we considered a deliberate design instruction where the jury was instructed on both murder and heat of passion manslaughter. The Court stated:

> [I]t is a contradiction in terms to state that a "deliberate design" can be formed **at the very moment** of the fatal act. Moreover, it is possible for a deliberate design to exist and the slaying nevertheless be no greater than manslaughter. . . . It can thus be seen that this special murder instruction granted the State rules out manslaughter, and is in hopeless conflict with the manslaughter instruction.

*Id.* at 126 (citation omitted) (emphasis added). *See also Cooley v. State*, 346 So. 2d 912, 914 (Miss. 1977). This Court held that instructing the jury that a deliberate design can arise at the instant of the killing conflicts with a heat of passion excusable homicide instruction and is reversible error.

¶14. The present instruction, however, is not the same instruction prohibited by *Windham* because *Windham* merely states that a deliberate design cannot be formed at *the very moment* of the fatal act. *Windham* mentions nothing in regard to whether a deliberate design may be formed *prior* to the fatal act as did the instruction here.

¶15. Furthermore, there was no error with the deliberate design instruction the jury was given. "It has long been the case law of this state, that malice aforethought, premeditated design, and deliberate design all mean the same thing." *Jones v. State*, 710 So. 2d 870, 876 (Miss. 1998). Moreover, "deliberate design may be formed very quickly, and perhaps only moments before the act of consummating the intent." *Id.* at 877. Consequently, the jury instructions were not in conflict, and the jury was properly instructed.

### II. THE PROSECUTOR COMMITTED REVERSIBLE ERROR WHEN HE COMMENTED, IN FRONT OF THE JURY, THAT THE DEFENDANT COULD TAKE THE STAND AND TESTIFY AS TO THREATS MADE AGAINST HIM BY EDDIE ALLEN.

¶16. Fears claims that the prosecutor made an improper reference to his right to remain silent by commenting on Fears's availability to testify about certain threats allegedly made by the victim before the shooting. Fears's attorney was attempting to elicit testimony about the threats from witness Earnestine Bew, Fears's grandmother, when the following discussion took place:

Q: And when he returned home, did he enter the house?

A: Yes

Q: Did he say anything to you?

A: Yes, he did.

Q: Do you recall what it was that he said?

[Mr. Pittman]: Your Honor, objection to hearsay.

The Court: I'm going to technically sustain.

Q: Did he say, Good morning, Grandma?

A: He said some things to me, but it wasn't -

[Mr. Pittman]: Your Honor, objection -

A: --and I'm not allowed to say that.

[Mr. Pittman]: -to anything he said as hearsay.

[The Court]: All right.

A: I'm not allowed to say, so I can't say it.

[Mr. Lawrence]: I don't understand the basis of the objection, Your Honor. Perhaps I need to return to law school, but if the Court may take the opportunity to educate me as to how a statement made from the defendant directly to her is hearsay. I'm not asking if he said anything regarding what anyone had stated.

[Mr. Pittman]: **Because the defendant is here to testify about what he said.**

(emphasis added).

¶17. Fears claims that the prosecutor's comment that "the defendant is here to testify about what he said" was a prohibited reference to Fears's right not to testify. Fears maintains that the right against self-incrimination is violated by a direct statement regarding the defendant's decision not to testify or a comment which could reasonably be construed by a jury as a comment about the defendant's failure to testify. *Holly v. State*, 671 So. 2d 32 (Miss. 1996); *Griffin v. State*, 557 So. 2d 542, 552 (Miss. 1990); *Jimpson v. State*, 532 So. 2d 985, 991 (Miss. 1988).

¶18. Fears's attorney did not object to the prosecutor's statement. However, the Court of Appeals correctly found that reversal may be required even without a contemporaneous objection when a prosecutor improperly comments on an accused's right not to testify. *Griffin v. State*, 557 So. 2d at 552. The Court of Appeals held that the prosecutor's comment was made in the context of a discussion on the admissibility of statements made by the defendant in the presence of his grandmother. The prosecutor was arguing that the statements were not hearsay because the declarant (Fears) was available to testify about his own statements. The Court of Appeals found that the remark was not directed to the jury and that it was not improper.

¶19. Fears maintains that the holding of the Court of Appeals is in conflict with *Strahan v. State*, 729 So. 2d 800 (Miss. 1998). In *Strahan*, three defendants were charged with murder. Two of the defendants had given pretrial statements to investigators, but Strahan had not. During closing argument, the prosecutor gave a summary of the evidence in which she repeatedly mentioned the statements given to police. After her outline of the evidence, she asked "Why? Why? What did the defendants say?" Strahan's motion for a mistrial was overruled. *Id.* at 806.

¶20. On appeal, this Court held that the remark was not reversible error. *Id.* at 807. The opinion reiterated that a prosecutor is prohibited from referring to a defendant's failure to testify "by innuendo or insinuation." *Id.* at 806 (citing *Wilson v. State*, 433 So. 2d 1142, 1146 (Miss. 1983)). The Court in *Strahan* also relied on *Ladner v. State*, 584 So. 2d 743, 754 (Miss. 1991), which held that the question in these cases

is "whether the comment of the prosecutor can reasonably be construed as a comment upon the failure of [the accused] to take the stand." Whether a comment is improper is determined on a case-by-case basis. *Strahan*, 729 So. 2d at 807. The Court held that the prosecutor was not commenting on Strahan's silence, but, rather, was commenting on the evidence, namely the statements made to police by Strahan's co-defendants. Based on the context in which the comment was made and on the fact that the judge instructed the jury not to draw any unfavorable inferences from the defendant's decision not to testify, the Court found no reversible error. *Id.* at 807.

¶21. Fears contends that *Strahan* requires reversal in his case. Fears claims that his fundamental right not to have the State comment on his right to remain silent was violated by the prosecutor's comment. He maintains that the prejudice from the comment was not cured by the judge's instructions as was the case in *Strahan*. In this case, the judge did not instruct the jury to disregard the prosecutor's comment and did not instruct the jury not to draw unfavorable inferences from Fears's decision not to testify. It should be noted that Fears's attorney did not object when the comment was made and did not offer any instruction on the jury's duty not to draw unfavorable inferences from Fears' failure to testify. However, the jury was twice instructed that "[t]he Defendant is not required to prove his innocence."

¶22. Based on the context of the discussion in which the prosecutor's comment was made, it is the conclusion of this Court that the statement was not an attempt to comment on Fears's right to remain silent. The comment was not a reference "by innuendo or insinuation" to Fears's right not to testify. The comment cannot reasonably be construed as a comment on the failure of Fears to take the stand.

## CONCLUSION

¶23. Fears's argument that the instructions given to the jury were in conflict is procedurally barred and is, alternatively, without merit. His claim that his right to remain silent was violated is likewise without merit. Therefore, the judgment of the Court of Appeals is affirmed.

¶24. **AFFIRMED.**

**PRATHER, C.J., MILLS AND COBB, JJ., CONCUR. WALLER, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY BANKS, P.J., AND McRAE, J. PITTMAN, P.J., AND DIAZ, J., NOT PARTICIPATING.**

**WALLER, JUSTICE, DISSENTING:**

¶25. In my view, the majority errs in finding Fears's objection to jury instruction S-8 on deliberate design procedurally barred and in concluding that, notwithstanding that bar, the jury was properly instructed on deliberate design. Unlike the majority, I see no significant distinction between "but for an instant before the fatal act" and one that says "at the moment of the fatal act." I therefore respectfully dissent. I begin by discussing the substantive law on deliberate design as this will demonstrate why this assignment of error is not procedurally barred.

¶26. In *Windham v. State,* 520 So. 2d 123 (Miss. 1987), this Court considered a very similar deliberate design instruction as the one given in the matter at hand. In *Windham,* the jury was instructed on both murder and heat of passion manslaughter. The Court held that

it is a contradiction in terms to state that a "deliberate design" can be formed at the very moment of the

fatal act. Moreover, it is possible for a deliberate design to exist and the slaying nevertheless be no greater than manslaughter. (Citation omitted.) It can thus be seen that this special murder instruction granted the State rules out manslaughter, and is in hopeless conflict with the manslaughter instruction.

*Id.* at 126 (citation omitted). *See also* **Cooley v. State**, 346 So. 2d 912 (Miss. 1977).

¶27. This Court has also held that an instruction which states that deliberate design can be formulated at the instant of the killing conflicts with excusable homicide instructions. In **Pittman v. State**, 297 So. 2d 888, 893 (Miss. 1974), this Court held that such an instruction

> fails to inform the jury that there are instances in which a deliberate design to kill may exist at the moment the fatal blow was struck and yet the homicide may be justifiable or excusable. . . . This instruction pared away the rights of the defendant and required the jury to find him guilty of murder even though the killing might have been justifiable. . . .

In **Pittman** and **Windham** this Court held that instructing the jury that deliberate design can arise at the very moment of the fatal act conflicts with the heat of passion excusable homicide instruction and is reversible error.

¶28. Further, in [**Williams v. State**](), 729 So. 2d 1181 (Miss. 1998), we explained that premeditation is an element of murder and that by definition premeditation connotes a prior design to kill for some appreciable time. Appreciable time allows the opportunity for reflection and consideration before committing the act. We reiterated that an instruction which allows the jury to find premeditation upon only an instant or moment before the act negates a finding of the required element:

> Premeditation is an element of murder. Miss. Code Ann. § 97-3-19(1) (Supp. 1998). This connotes a prior design to kill. Although our law has never prescribed any particular ex ante time requirement, the essence of the required intent is that the accused must have had some **appreciable time** for reflection and consideration before pulling the trigger. **In this context, we have for years condemned instructions that tell the jury in homicide cases that "malice aforethought" or "deliberate design" may be found though it has existed in the mind of the accused but for an "instant" or a "moment."**

(emphasis added) (quoting **Blanks v. State**, 542 So. 2d 222, 225 (Miss. 1989)). *See also* **Watts v. State**, 305 So. 2d 348, 350 (Miss. 1974) ("but for an instant at the very time the shot is fired"); **Toney v. State**, 298 So. 2d 716, 719-20 (Miss. 1974) (same); **McDonald v. State**, 78 Miss. 369, 375, 29 So. 171, 172 (1901) ("existed but an instant").

¶29. The majority finds that the Court of Appeals properly barred Fears's objection to the instruction S-8 since he did not object to the conflicting instructions and did not assign the issue as error in his motion for new trial. This is incorrect. In **Duvall v. State**, 634 So. 2d 524 (Miss. 1994), this Court held that giving a premeditated design instruction in which it is claimed that deliberate design can originate "at the very moment of the act of violence," was reversible error. In that case, the Court held that "[t]here is no reason for the prosecuting attorney and the circuit judge to be unaware of the clear holding in **Windham**." **Duvall,** 634 So. 2d at 525. The Court also held that the failure of the defense attorney to object to the instruction did not prevent the Court from reversing the conviction. The Court held:

> Where, however, the State offers and the circuit judge grants an instruction which we have clearly

held is erroneous, we are not going to hold defense counsel to the same degree of diligence he has on instructions this Court has not ruled upon. We again hold that when the circuit court grants instructions clearly erroneous and which deny the accused a fair and objective evaluation of the evidence by the jury, we will reverse, **even though there was no objection by defense counsel.**

*Id.* at 526 (emphasis added). It is clear from this Court's holding in *Williams*, as delineated above, that *Duvall* could not have been read to distinguish between "but for an instant" and "at the very moment." Indeed, this Court has never made a distinction between the two. As is evident from reading *Williams*, the key point in the *Duvall*, *Pittman*, *Windham* line of cases is that there must be evidence of some appreciable time period during which the deliberate design is formed. It should have been clear to the circuit judge and the prosecutor that "but for an instant" is not something which is appreciable. The fact that the defense did not object to the instruction is not determinative. Under *Duvall*, the issue is not procedurally barred, and the jury in this case received hopelessly conflicting instructions which denied Fears a fair trial.

¶30. Because the jury received conflicting jury instructions, the judgments of the Court of Appeals and the Circuit Court of Perry County and Fears's conviction should be reversed and this case remanded to the Circuit Court of Perry County for a new trial.

**BANKS, P.J., AND McRAE, J., JOIN THIS OPINION.**